UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| ANTONIO MCKINNEY, | ) |
| Plaintiff, | ) ) ) |
| v. | ) 2:25-cv-00355-SDN ) |
| TROOPER WING, et al., | ) ) ) |
| Defendants. | ) |

## ORDER

Antonio McKinney sued two Maine State Police officers and the Lewiston, Maine, Police Department for allegedly violating his constitutional rights during a roadside stop where the officers strip searched him. Mr. McKinney now moves for a temporary restraining order (TRO) and preliminary injunction against the defendants. ECF No. 7. For the following reasons, his motion for a temporary restraining order and preliminary injunction is denied.

### FACTUAL BACKGROUND[1]

On October 5, 2020, Maine State Police officers Jason Wing and Brian Hink pulled over a car in which Mr. McKinney was riding as a passenger. The stop developed into a prolonged encounter, the details of which are not relevant here. Ultimately, the officers strip searched Mr. McKinney on the side of the highway and discovered a bag of cocaine.

As a result, Mr. McKinney was indicted in state court on three drug charges. However, the Androscoggin County Superior Court suppressed the evidence obtained

---

[1] I draw these facts from all documents of "evidentiary quality" in the record. *Rosario-Urdaz v. Rivera-Hernandez*, 350 F.3d 219, 223 (1st Cir. 2003); *Calvary Chapel Belfast v. Univ. of Maine Sys.*, No. 24-cv-00392, 2025 WL 71701, at *1 (D. Me. Jan. 10, 2025).

from the strip search, finding the search violated Mr. McKinney's Fourth Amendment rights. Although it is not entirely clear, interpreting Mr. McKinney's filings liberally it appears the state court dismissed the charges, but the arrest remains on Mr. McKinney's criminal record. *See* ECF 6-2 at 2 (noting the defendants' "failure to remove a dismissed charge from state systems"); *id*. at 3 ("No charges from that incident resulted in a valid conviction, and any such case was dismissed."); ECF No. 7 at 2 ("That case was never lawfully adjudicated but has remained on Plaintiff's record . . . .").

On March 29, 2023, Mr. McKinney was arrested again, this time by officers of the Lewiston Police Department. Mr. McKinney claims the arresting officers "relied on outdated or invalid case information" and injured him during the arrest. ECF No. 6-2 at 3. According to a narrative report apparently written by one of the arresting officers,[2] the arresting officer believed Mr. McKinney was subject to bail conditions based on police records. *See* ECF No. 1-3 at 24. Those conditions included that Mr. McKinney could be searched at any time without suspicion or probable cause. Based on a tip from another police officer, the arresting officer attempted to search Mr. McKinney, but Mr. McKinney allegedly resisted and ran away. After eventually arresting Mr. McKinney for refusing to submit to detention and taking him to the jail, the arresting officer learned that "there was a clerical error" in Mr. McKinney's file and that Mr. McKinney was not subject to any bail conditions. *Id*. at 25.

---

[2] Mr. McKinney attached the "Narrative for Patrol Officer Aaron Schmitz" to his complaint. While courts may consider documents attached to a complaint on a motion to dismiss in some circumstances, *Watterson v. Page*, 987 F.2d 1, 3–4 (1st Cir. 1993), on a motion for a temporary restraining order I must consider only documents of "evidentiary quality," *Rosario-Urdaz*, 350 F.3d at 223. The evidentiary quality of the narrative report is limited: it appears to be unauthenticated hearsay. Still, because I may relax evidentiary rules at this preliminary stage and because it does not alter my ultimate decision on this motion, I will consider the document. *See BTL Indus., Inc. v. Rejuva Fresh LLC*, No. 23-CV-00032, 2025 WL 1333524, at *3 (D. Me. May 7, 2025).

Then, on July 5, 2025, Lewiston Police detained and injured Mr. McKinney under what he calls "similar circumstances." ECF No. 6-2 at 4. Nothing in the record describes in detail the July 5th encounter. On July 7, 2025, Mr. McKinney contacted the Internal Affairs Division of the Lewiston Police Department. He states the representative he spoke with was "intimidating, dismissive, and retaliatory," tried to "justif[y] the department's actions," and claimed to have been "watching" Mr. McKinney "all day." ECF No. 1-3 at 1–2.

Mr. McKinney seeks damages under 42 U.S.C. § 1983 for violations of the Fourth, Fifth, and Fourteenth Amendments. He also seeks a declaratory judgment that the defendants violated his constitutional rights, an injunction barring the defendants from "maintaining invalid records," and any other relief the Court deems appropriate.

Mr. McKinney's motion for a TRO seeks an injunction barring the Lewiston Police Department and its officers from "[m]aking any physical or investigative contact with Plaintiff," "[d]etaining or attempting to detain Plaintiff without a valid court-issued warrant," or "[h]arrassing, surveilling, or retaliating against Plaintiff in any form during the pendency of this action." ECF No. 7 at 3–4. Mr. McKinney also asks the Court to order the defendants to "cease enforcement or use of any unresolved or inactive case related to the October 5, 2020[,] incident." *Id.* at 4. The Lewiston Police Department responded to Mr. McKinney's motion, ECF No. 9, and Mr. McKinney replied, ECF No. 12.

## DISCUSSION

Preliminary injunctive relief "is an extraordinary and drastic remedy that is never awarded as of right." *Peoples Fed. Sav. Bank v. People's United Bank*, 672 F.3d 1, 8–9 (1st Cir. 2012) (quoting *Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc.*, 645 F.3d 26, 32 (1st Cir. 2011)). Of the two types of preliminary relief, a temporary restraining

order "is an even more exceptional remedy than a preliminary injunction" because it can be issued "without notice to the other party." *Graham v. Costello*, No. 21-CV-00258, 2021 WL 4205603, at *1 (D. Me. Sept. 15, 2021), *R&R adopted*, 2021 WL 4810326 (Oct. 14, 2021). For both types of relief, I must consider the same four factors:

> (1) the likelihood of success on the merits; (2) the potential for irreparable harm [to the movant] if the injunction is denied; (3) the balance of relevant impositions, i.e., the hardship to the nonmovant if enjoined as contrasted with the hardship to the movant if no injunction issues; and (4) the effect (if any) of the court's ruling on the public interest.

*Calvary Chapel of Bangor v. Mills*, 459 F. Supp. 3d 273, 282 (D. Me. 2020) (quoting *Esso Standard Oil Co. (P.R.) v. Monroig-Zayas*, 445 F.3d 13, 18 (1st Cir. 2006)). The movant bears the burden of showing that these factors weigh in their favor, *Esso*, 445 F.3d at 18, but the first factor holds the heaviest sway over the analysis. "[I]f the moving party cannot demonstrate that [they are] likely to succeed in [their] quest, the remaining factors become matters of idle curiosity." *New Comm Wireless Servs., Inc. v. SprintCom, Inc.*, 287 F.3d 1, 9 (1st Cir. 2002).

To have standing to raise a claim for prospective injunctive relief, the plaintiff must "'establish a real and immediate threat' resulting in 'a sufficient likelihood that [they] will again be wronged in a similar way.'" *Gray v. Cummings*, 917 F.3d 1, 19 (1st Cir. 2019) (quoting *Am. Postal Workers Union v. Frank*, 968 F.2d 1373, 1376 (1st Cir. 1992)). The fact that a plaintiff was wronged in the past is not enough. *Id*. In the context of claims stemming from encounters with the police, it also is not enough for a plaintiff to show they are "likely to encounter the police again." *Id*. Rather, the plaintiff must show they are likely to be wronged again "in a similar way." *City of L.A. v. Lyons*, 461 U.S. 95, 111 (1983). Without standing to raise a claim for prospective injunctive relief, a plaintiff cannot succeed on the merits of that claim.

4

Here, Mr. McKinney does not demonstrate he is likely to be illegally searched or detained by Lewiston Police officers in the future. Nor does Mr. McKinney show any defendants are likely to use his state court drug charge and related records in an unlawful manner in the future. Since the October 5, 2020, strip search—which was conducted by officers with the Maine State Police, not the Lewiston Police Department—Mr. McKinney has alleged three encounters with the Lewiston Police Department: First, on March 29, 2023, Mr. McKinney was arrested by officers of the Lewiston Police Department after a clerical error led the officers to believe they could search Mr. McKinney. Second, on July 5, 2025, Lewiston Police detained and injured Mr. McKinney. Third, on July 7, 2025, Mr. McKinney spoke with someone from the Internal Affairs Division of the Lewiston Police Department, and they responded in an "intimidating, dismissive, and retaliatory" manner.

The fact that Mr. McKinney has been detained, arrested, and even injured during these encounters with the Lewiston Police Department does not necessarily mean that he was wronged in a legally cognizable way. *See Graham v. Connor*, 490 U.S. 386, 396 (1989) ("[T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it."). The legality of a detention and arrest turns on the particular facts and circumstances of each case, and the record here is too thin to determine any potential illegality at this stage. *United States v. Langston*, 110 F.4th 408, 422 (1st Cir. 2024) (explaining that courts must consider the "totality of the circumstances" including "all the cumulative information available to the officers at the time of the search or stop" (quotation modified)); *Graham*, 490 U.S. at 396 (in the context of excessive force claims, a court must consider "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or

5

others, and whether he is actively resisting arrest or attempting to evade arrest by flight"). Therefore, at this stage, there are insufficient facts in the record from which I can conclude the Lewiston Police violated Mr. McKinney's rights during these three encounters. Indeed, Mr. McKinney does not describe the factual circumstances of his July 5, 2025, detention.[3] As for the October 5, 2020, strip search that involved Maine State Police Officers Wing and Hink, I cannot infer from the conduct of Maine State Police officers that the Lewiston Police Department is likely to violate Mr. McKinney's rights in the future.

While it may be reasonable to conclude Mr. McKinney is likely to encounter police again, *Gray*, 917 F.3d at 19, without knowing whether or not those past encounters were legally justified, I cannot infer there is a pattern of wrongful conduct likely to repeat itself. Therefore, I cannot conclude Mr. McKinney has standing to seek prospective injunctive relief. *See Lyons*, 461 U.S. at 111. Accordingly, on this record, Mr. McKinney is unlikely to succeed on the merits of his claims for injunctive relief.

Because Mr. McKinney has not borne his burden of showing he is likely to succeed on the merits of his claim for injunctive relief, I need not address the remaining factors governing preliminary relief. *New Comm Wireless*, 287 F.3d at 12 (declining to address other factors "absent a demonstrated likelihood of success").

---

[3] I need not consider Mr. McKinney's allegation that Lewiston Police officers "have been recorded or witnessed" saying, "I don't give a fuck," ECF No. 12 at 2, because he makes this allegation only in his unsworn reply brief, which has no evidentiary weight. *See Rosario-Urdaz*, 350 F.3d at 223. Even if I did consider that allegation, it does not alter my conclusion because I cannot infer from this out-of-context statement that Lewiston Police officers are likely to harm Mr. McKinney in a legally cognizable manner in the future.

## CONCLUSION

Having concluded Mr. McKinney is unlikely to succeed on the merits, I need go no further. I find Mr. McKinney is not entitled to a temporary restraining order or preliminary injunction and **DENY** his motion.

**SO ORDERED.**

Dated this 5th day of August, 2025.

/s/ Stacey D. Neumann
**UNITED STATES DISTRICT JUDGE**
