UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| ANTONIO MCKINNEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:25-cv-00355-SDN |
| | ) | |
| TROOPER WING, et al., | ) | |
| | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| ANTONIO MCKINNEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:25-cv-00367-SDN |
| | ) | |
| LEWISTON POLICE DEPARTMENT, et al., | ) | |
| | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| ANTONIO MCKINNEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:25-cv-00368-SDN |
| | ) | |
| ANDROSCOGGIN COUNTY JAIL, et al., | ) | |
| | ) | |
| Defendants. | ) | |

1

## <u>OMNIBUS ORDER</u>

This order concerns three lawsuits Plaintiff Antonio McKinney has brought against various state defendants.[1] Because the factual allegations and issues largely overlap across the cases, the Court considers them together for clarity and efficiency.

## I.   Background

Because Mr. McKinney proceeded without prepayment of fees, the Magistrate Judge reviewed his complaints for dismissal by determining if he "fail[ed] to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B). The Magistrate Judge recommended dismissal of all but one of the claims across the three suits. Mr. McKinney timely objected to all three recommended decisions. The Court reviews the Magistrate Judge's decisions de novo, *see* Fed. R. Civ. P. 72(b)(3), and draws all reasonable inferences in Plaintiff's favor, *see Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011).

The following encounters with law enforcement are at issue in each of Mr. McKinney's cases.[2]

---

[1] In *McKinney v. Wing*, Mr. McKinney brought claims against Troopers Wing and Hink of the Maine State Police and the Lewiston Police Department. *See* Dkt. No. 25-cv-355, ECF No. 1. In *McKinney v. Lewiston Police Department*, Mr. McKinney brought claims against the Lewiston Police Department and the Androscoggin County Jail. *See* Dkt. No. 25-cv-367, ECF No. 1. In *McKinney v. Androscoggin County Jail*, Mr. McKinney brought claims against Androscoggin County, the Androscoggin County Sheriff's Department and three named employees, the Androscoggin County Jail ("ACJ") and six named employees, ACJ Corporal Litchfield, five unnamed John Doe ACJ corrections officers, the Lewiston Police Department and two unnamed Lewiston Police officers, and unidentified subcontractors of the ACJ and sheriff's department. *See* Dkt. No. 25-cv-368, ECF Nos. 1, 7.

[2] The factual allegations are drawn from the complaints and/or amended complaints in each case, supplements to the complaints, and attachments to Mr. McKinney's pleadings. *See Flanders v. Mass Resistance*, No. 12-cv-00262, 2013 WL 2237848, at *9 (D. Me. May 21, 2013) ("The pleadings of a pro se plaintiff may be interpreted in light of his or her supplemental submissions."). The Magistrate Judge also considered these documents in his recommended decisions. *See* Dkt. No. 25-cv-355, ECF No. 31 at 2 n.1.

### A. October 5, 2020

On October 5, 2020, Maine State Police Troopers Wing and Hink stopped a car in which Mr. McKinney was a passenger. The stop developed into a prolonged encounter, the details of which are not relevant here. Ultimately, the officers strip searched Mr. McKinney on the side of the highway and discovered a bag of cocaine.

As a result, Mr. McKinney was indicted in state court on three drug charges. However, the Androscoggin County Superior Court suppressed the evidence obtained from the strip search, finding the search violated Mr. McKinney's Fourth Amendment rights. Although it is not entirely clear, when interpreting Mr. McKinney's filings liberally, it appears the state court dismissed the charges, but the arrest remains on Mr. McKinney's criminal record. *See* Dkt. No. 25-cv-355, ECF 6-2 at 2 (noting the "defendants' failure to remove a dismissed charge from state systems"); *id*. at 3 ("No charges from that incident resulted in a valid conviction, and any such case was dismissed."); Dkt. No. 25-cv-355, ECF No. 7 at 2 ("That case was never lawfully adjudicated but has remained on Plaintiff's record . . . .").

### B. March 29, 2023

On or about March 29, 2023, Mr. McKinney was arrested again, this time by officers of the Lewiston Police Department. Mr. McKinney claims the arresting officers "relied on outdated or invalid case information" and injured him during the arrest. Dkt. No. 25-cv-355, ECF No. 6-2 at 3–4. According to a narrative report apparently written by one of the arresting officers,[3] the arresting officer believed Mr. McKinney was subject to bail conditions based on police records. *See* Dkt. No. 25-cv-355, ECF No. 1-3 at 24. Those

---

[3] Mr. McKinney attached the "Narrative for Patrol Officer Aaron Schmitz" to his complaint. Courts may consider documents attached to a complaint in some circumstances. *See Watterson v. Page*, 987 F.2d 1, 3–4 (1st Cir. 1993). The Court therefore considers the document.

conditions included that Mr. McKinney could be searched at any time without suspicion or probable cause. Based on a tip from another police officer, the arresting officer attempted to search Mr. McKinney, but Mr. McKinney allegedly resisted and ran away. After eventually arresting Mr. McKinney for refusing to submit to detention and taking him to the Androscoggin County Jail ("ACJ"), the arresting officer learned that "there was a clerical error" in Mr. McKinney's file and that Mr. McKinney was not subject to any bail conditions. *Id*. at 25. Upon arrival at the jail, Mr. McKinney asserts he was strip searched. Dkt. No. 25-cv-368, ECF No. 1 at 4.

### C. July 21, 2023

Under circumstances not detailed in the complaints, Mr. McKinney was again arrested and taken to the ACJ on July 21, 2023. He alleges jail officials strip-searched him and failed to return two items of personal property—a gold chain and a diamond piece—upon his release. Dkt. No. 25-cv-368, ECF No. 1 at 4. He further claims that ACJ Corporal Litchfield, a supervising officer, "confirmed" no warrant existed before his arrest, rendering his detention unconstitutional. *Id*.

### D. July 5, 2025

On or about July 5, 2025, Lewiston Police detained and injured Mr. McKinney under what he calls "similar circumstances" to the March 29, 2023, incident. Dkt. No. 25-cv-355, ECF No. 6-2 at 4. Nothing in the records describes the July 5th encounter in further detail. On July 7, 2025, Mr. McKinney contacted the Internal Affairs Division of the Lewiston Police Department regarding concerns about data the Department allegedly kept about his cases. Dkt. No. 25-cv-355, ECF No. 1-3 at 1. He states the representative he spoke with was "intimidating, dismissive, and retaliatory," tried to "justify[] the department's actions," and claimed to have been "watching" Mr. McKinney "all day." *Id*.

4

at 1–2. At some point during or after this conversation, Mr. McKinney submitted requests for public records to the Lewiston Police Department and the ACJ under the Maine Freedom of Access Act ("FOAA"), 1 M.R.S. § 400 *et seq. See* Dkt. No. 25-cv-367, ECF No. 1 at 2–3. He claims he never received responses to those requests.

### E. Miscellaneous Factual Assertions

Mr. McKinney describes two additional incidents, though he does not specify when they occurred. While incarcerated at the ACJ, he alleges that several officials delayed his emergency transport to a hospital despite a "serious medical condition." Dkt. No. 25-cv-368, ECF No. 7 at 3. He further contends that jail staff denied him basic clothing, including socks and underwear, and failed to conduct fire drills in compliance with safety standards. *Id.*

### II.    Analysis

In evaluating a complaint for failure to state a claim, the Court engages in a two-step analysis. *See Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012). First, the Court isolates and disregards statements that provide only legal labels, conclusions, or rote recitations of cause-of-action elements. *Id.* Second, accepting the well-pleaded factual allegations as true and drawing all reasonable inferences for the Plaintiff, the Court decides whether the complaint plausibly states a claim for relief. *See Ocasio-Hernández*, 640 F.3d at 12 (discussing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). A self-represented plaintiff remains subject to this standard, but the Court "must construe his complaint 'liberally' and hold it 'to less stringent standards than formal pleadings drafted by lawyers.'" *Waterman v. Paul G. White Interior Sols.*, No. 2:19-cv-00032, 2019 WL 5764661, at *2 (D. Me. Nov. 5, 2019) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)). "To allege a civil action

in federal court, it is not enough for a plaintiff merely to allege that a defendant acted unlawfully; a plaintiff must affirmatively allege facts that identify the manner in which the defendant subjected the plaintiff to a harm for which the law affords a remedy." *Schiller v. Ferneld*, No. 2:21-cv-00306, 2021 WL 5494517, at *1 (D. Me. Nov. 21, 2021), *report and recommendation adopted*, 2021 WL 5815820 (D. Me. Dec. 7, 2021) (citing *Iqbal*, 556 U.S. at 678).

## A. Vicarious Liability

Mr. McKinney seeks to assert constitutional claims under 42 U.S.C. § 1983 against the Lewiston Police Department, the Androscoggin County Sheriff's Department, and the Androscoggin County Jail. Because these law enforcement agencies are not suable entities separate from their respective municipalities, the Court construes the claims as brought against the City of Lewiston and Androscoggin County respectively. *See Henschel v. Worcester Police Dep't*, 445 F.2d 624, 624 (1st Cir. 1971) (affirming dismissal of § 1983 claim against police department because it was not a suable entity apart from the municipality); *Bayne v. Mills*, No. 25-cv-00047, 2025 WL 1248919, at *2 (D. Me. Apr. 30, 2025), *report and recommendation adopted*, 2025 WL 2030183 (D. Me. July 21, 2025) (same).

However, a municipality cannot be held vicariously liable for constitutional violations committed by its employees. To establish municipal liability under § 1983, a Plaintiff must identify a municipal "policy" or "custom" that caused the alleged injury. *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997). Mr. McKinney has not alleged any policy or custom that could serve as a basis for liability against either the City of Lewiston or Androscoggin County. Accordingly, to the extent any of Mr. McKinney's constitutional claims survive, the Court considers only the § 1983 claims brought against the individual

6

defendants in their personal capacities. *See Canales v. Gatzunis*, 979 F. Supp. 2d 164, 171 (D. Mass. 2013) (dismissing § 1983 claims against the Sheriff's Department and against employees in their official capacities, while allowing claims against an individual defendant in his personal capacity to proceed). Any governmental entities named as Defendants are accordingly entitled to dismissal.

### B. Supervisory Liability

Mr. McKinney asserts two instances in which jail supervisors allegedly violated his rights. Although a superior officer cannot be held vicariously liable under 42 U.S.C. § 1983 on a respondeat superior theory, *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978), a supervisor may be found liable under section 1983 on the basis of the supervisor's own acts or omissions, *see Bowen v. City of Manchester*, 966 F.2d 13, 20 (1st Cir. 1992). "[A] supervisor may be held liable for what he does (or fails to do) if his behavior demonstrates deliberate indifference to conduct that is itself violative of a plaintiff's constitutional rights." *Maldonado-Denis v. Castillo-Rodriguez*, 23 F.3d 576, 582 (1st Cir. 1994). But it is not enough for the Plaintiff to show deliberate indifference; he must also "affirmatively connect the supervisor's conduct to the subordinate's violative act or omission." *Id.*

First, Mr. McKinney claims that upon his arrival at the ACJ, Corporal Litchfield, presumably in his supervisory capacity, "confirmed no warrant existed" for Mr. McKinney's arrest. Dkt. No. 25-cv-368, ECF No. 1 at 4. According to Mr. McKinney, this means his detention and subsequent strip search were impermissible and without judicial authorization. *See id.* Because Mr. McKinney's claims fail to establish the requisite causation, however, this allegation does not establish supervisory liability. Mr. McKinney does not allege Corporal Litchfield's actions, inactions, or policies caused unnamed police

officers to detain Mr. McKinney in the first instance—with or without a warrant—on July 21, 2023.

Second, Mr. McKinney alleges ACJ Sergeants Mason and Harts and Major Feldman ordered corrections officers not to transport Mr. McKinney to the hospital overnight after he alerted them to his medical needs. *See* Dkt. No. 25-cv-368, ECF No. 7 at 3. While a causal link between a supervisor's actions and subsequent constitutional violations may be established "if there exists a known history of widespread abuse sufficient to alert a supervisor to ongoing violations," "isolated instances of unconstitutional activity" are insufficient to establish a supervisor's policy, custom, or deliberate indifference. *Maldonado-Denis*, 23 F.3d at 582. Even assuming Mr. McKinney is correct that Defendants' conduct could constitute deliberate indifference under the Eighth Amendment, *see infra*, Subsection II.F (discussing the Eighth Amendment claims), Mr. McKinney fails to plead any facts suggesting this was anything beyond an isolated instance. He does not allege a policy at the ACJ or on the part of ACJ's supervisors to deny inmates medical care.

Accordingly, Mr. McKinney fails to state a plausible claim of supervisory liability against Defendants Mason, Feldman, Harts, or Litchfield.[4]

### C. Fourth Amendment

The Court construes Mr. McKinney's encounters with law enforcement in October 2020, March 2023, July 2023, and July 2025 as alleged violations of his Fourth

---

[4] Mr. McKinney names several other officers in his amended complaint in *McKinney v. Androscoggin County Jail* who may or may not have held supervisory roles. He does not explain their connections to his claims or ascribe to them any conduct. As such, he has not stated an actionable claim against any of the other individuals joined as defendants in this case. *See* Dkt. No. 25-cv-368, ECF No. 7 at 1; *Iqbal*, 556 U.S. at 676–77 ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

Amendment rights against the named and unnamed law enforcement officers in their individual capacities. The allegations fall into three categories.

*First*, Mr. McKinney asserts unnamed officers used excessive force during his March 2023 and July 2025 arrests. The Fourth Amendment protects against unreasonable seizures, including the use of excessive force. *See* U.S. Const. amend. IV; *Graham v. Connor*, 490 U.S. 386, 394–95 (1989). An officer violates this protection by employing force that exceeds what is objectively reasonable under the circumstances. *See id.* at 394–95. Courts evaluate the reasonableness of force by considering factors such as the severity of the suspected offense, whether the suspect posed an immediate threat, and whether he resisted or attempted to flee. *See Jennings v. Jones*, 499 F.3d 2, 11 (1st Cir. 2007). Here, however, Mr. McKinney offers no factual detail about either encounter—no description of the force used, the context of the encounters, or the officers' conduct. Without such allegations, the Court cannot plausibly infer that the force was unreasonable. His excessive force claims therefore fail.

*Second*, Mr. McKinney appears to allege that officers stopped or arrested him without warrants in March 2023, July 2023, and July 2025. A warrantless arrest is constitutional if supported by probable cause. *Vargas-Badillo v. Díaz-Torres*, 114 F.3d 3, 6 (1st Cir. 1997). Probable cause exists when the facts and reasonably trustworthy information known to officers would warrant a prudent person in believing the suspect committed or was committing an offense. *Beck v. Ohio*, 379 U.S. 89, 91 (1964). Again, Mr.

McKinney pleads no facts describing the circumstances of these arrests. Absent such detail, he fails to allege a plausible lack of probable cause.[5]

*Third*, Mr. McKinney alleges unnamed officers subjected him to strip searches each time he was transported to the ACJ. The First Circuit recognizes that institutional security can justify warrantless strip searches in custodial settings, even absent individualized suspicion in some circumstances. *See Roberts v. State of R.I.*, 239 F.3d 107, 111 (1st Cir. 2001). At the same time, overly broad or intrusive policies may render such searches unreasonable depending on the context. *See id*. at 111–13. Because Mr. McKinney provides no facts about how these searches were conducted or why they were unreasonable, he fails to state a viable Fourth Amendment claim on this basis.

The October 2020 encounter with Troopers Hink and Wing stands on different footing, however. Here, Mr. McKinney alleges in detail that the troopers conducted a public strip search along the side of a highway without reasonable suspicion that he had committed a crime.[6] Accepting these allegations as true at this stage, the Court can plausibly infer a Fourth Amendment violation. *See Swain v. Spinney*, 117 F.3d 1, 7 (1st Cir. 1997) ("[T]o be reasonable . . . , strip and visual body cavity searches must be justified by at least a reasonable suspicion that the arrestee is concealing contraband or weapons."). Accordingly, Mr. McKinney states a viable Fourth Amendment claim against Troopers Wing and Hink.

---

[5] As the Magistrate Judge observes, publicly available records from Mr. McKinney's state court proceedings—of which the Court may take judicial notice, *see* Fed. R. Civ. P. 201—indicate that multiple arrest warrants were active at the times of the challenged detentions. *See* Dkt. No. 25-cv-368, ECF No. 11 at 5–6. This further undercuts any inference that officers lacked probable cause.

[6] Mr. McKinney attaches to his complaint a copy of the state district court order granting his motion to suppress the results of the strip search, which found that officers lacked reasonable, articulable suspicion to justify the search. *See* Dkt. No. 25-cv-355, ECF No. 1-3 at 9–23.

In sum, Mr. McKinney fails to state a Fourth Amendment claim for all alleged incidents except Count I against Defendants Wing and Hink. *See* Dkt. No. 25-cv-355, ECF No. 1 at 9.

### D. First Amendment Retaliation

Mr. McKinney alleges unnamed defendant officers retaliated against him by stopping and arresting him after he filed complaints and requested public records from the Internal Affairs divisions of the ACJ and the Lewiston Police Department. To properly assert a First Amendment retaliation claim, a plaintiff must plausibly allege facts sufficient to show "(1) he or she engaged in constitutionally protected conduct, (2) he or she was subjected to an adverse action by the defendant, and (3) the protected conduct was a substantial or motivating factor in the adverse action." *D.B. ex rel. Elizabeth B. v. Esposito*, 675 F.3d 26, 43 (1st Cir. 2012).

Mr. McKinney's own allegations belie the third factor. His pleadings establish that the arrests at issue occurred before he filed his complaints in July 2025, making it implausible that those complaints motivated the challenged actions. In addition, the complaint offers no factual detail regarding the content of his Internal Affairs complaints or the nature and scope of the Defendants' alleged failure to respond to his FOAA requests. These omissions further undermine any inference of retaliatory motive. Because Mr. McKinney fails to allege facts supporting a plausible First Amendment claim, dismissal is warranted. Accordingly, the Court therefore declines to exercise supplemental jurisdiction over any related state law claim. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 722 (1966) (explaining that when federal claims are dismissed before trial, state law claims ordinarily should be dismissed as well).

### E. Fifth and Fourteenth Amendments

Mr. McKinney alleges unnamed jail officials failed to return his personal property following his July 21, 2023, arrest and detention at the ACJ. The Fifth and Fourteenth Amendments govern the government retention of property after a lawful initial seizure. *See Denault v. Ahern*, 857 F.3d 76, 84 (1st Cir. 2017). Because Mr. McKinney appears to contend jail officials acted outside of established procedures, his claim implicates the *Parratt-Hudson* doctrine. Under that doctrine, a due process violation arises only if a State fails to provide an adequate post-deprivation remedy for the property loss. *See Hudson v. Palmer*, 468 U.S. 517, 532 (1984) ("Where a loss of property is occasioned by a random, unauthorized act by a state employee, rather than by an established state procedure . . . it is difficult to conceive of how the State could provide a meaningful hearing before the deprivation takes place.") (quotation modified)); *Lowe v. Scott*, 959 F.2d 323, 340 (1st Cir. 1992) ("[W]hen a state official is not acting pursuant to established state procedure, the state is not in a position to provide anything other than such postdeprivation remedies[.]").

Mr. McKinney alleges no facts regarding the availability or adequacy of post-deprivation remedies, nor does he plausibly allege that he pursued such remedies beyond simply requesting the return of his property. These omissions are fatal to his due process claim. Accordingly, he fails to state a plausible claim for relief based on the alleged deprivation of his property.

To the extent Mr. McKinney also asserts unnamed officers violated his due process rights by failing to wear body-worn cameras during his arrests, that claim likewise fails. He identifies no constitutionally protected life, liberty, or property interest in the recording of police encounters. *See, e.g., Baca v. Anderson*, No. 22-cv-02461, 2022 WL

7094267, at *7 (N.D. Cal. Oct. 12, 2022) (dismissing a constitutional claim because the plaintiff "has not shown that the asserted right to body camera footage is a constitutionally protected life, liberty, or property interest").

### F. Eighth and Fourteenth Amendments

Mr. McKinney asserts ACJ officials—specifically Sergeants Mason and Harts and Major Feldman—acted with deliberate indifference in violation of the Eighth and Fourteenth Amendments by failing to provide timely medical care after he reported a medical issue. Deliberate indifference requires a mental state "more blameworthy than negligence." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). The Supreme Court has drawn a clear distinction between "deliberate indifference to serious medical needs," which is actionable, and mere negligence "in diagnosing or treating a medical condition," which is not. *Id*. (quoting *Estelle v. Gamble*, 429 U.S. 97, 104, 106 (1976)).

Mr. McKinney's allegations do not plausibly satisfy the deliberate indifference standard. He fails to describe the nature and severity of his medical needs, the substance of his request for care, whether the alleged condition required diagnosis or treatment, and even the date the alleged events occurred. Without such factual content, the complaint does not support a reasonable inference that any Defendant knowingly disregarded a serious medical need.

Mr. McKinney's additional claims regarding inadequate clothing and alleged failures to follow prescribed fire safety procedures suffer from the same deficiencies. He does not identify which Defendants were responsible for these conditions or allege facts showing that any official acted with deliberate indifference. Courts routinely dismiss such claims where the plaintiff fails to allege specific facts linking particular defendants to unconstitutional conduct or to describe the resulting harm. *See, e.g., Cable v. Wall*, No.

13

CIV.A. 09-439, 2010 WL 1486494, at *5 (D.R.I. Mar. 18, 2010), *report and recommendation adopted*, 2010 WL 1531374 (D.R.I. Apr. 13, 2010); *Sowell v. Fair*, 915 F.2d 1557, 1990 WL 152343, at *5 (1st Cir. 1990) (dismissing Eighth Amendment safety regulations claim "where the complaint lacked detailed factual allegations identifying what chemicals plaintiff was exposed to, what harm resulted, and what efforts plaintiff made to bring these conditions to the attention of the authorities"). Accordingly, Mr. McKinney fails to state a plausible claim for relief under the Eighth and Fourteenth Amendments.[7]

### III.   Conclusion

For the reasons provided herein, the Court **AFFIRMS** and **ADOPTS** the Recommended Decisions. Dkt. No. 25-cv-355, ECF No. 31; Dkt. No. 25-cv-367, ECF No. 9; Dkt. No. 25-cv-368, ECF No. 11. Plaintiff's complaints in Case No. 25-cv-367 and Case No. 25-cv-368 are **DISMISSED** in their entirety. Plaintiff's complaint in Case No. 25-cv-355 is **DISMISSED** except as to the Fourth Amendment claim against Defendants Wing and Hink (Count I). All other Defendants in Case No. 25-cv-355 are **DISMISSED**. Plaintiff's Motions to Hold Magistrate and District Judges Accountable are **DISMISSED AS MOOT**. Dkt. No. 25-cv-355, ECF No. 33; Dkt. No. 25-cv-367, ECF No. 11; Dkt. No. 25-cv-368, ECF No. 13. Plaintiff's Motion to Compel Ruling is **DISMISSED AS MOOT**. Dkt. No. 25-cv-355, ECF No. 35.

---

[7] Mr. McKinney has also filed a "Motion to Hold Magistrate and District Judges Accountable" in each case, as well as a "Motion to Compel Ruling." *See* Dkt. No. 25-cv-355, ECF Nos. 33, 35; Dkt. No. 25-cv-367, ECF No. 11; Dkt. No. 25-cv-368, ECF No. 13. In large part, the motions restate his claims for relief. To the extent he raises any other arguments, the Court has considered them and determines they are frivolous.

**SO ORDERED.**

Dated this 22nd day of April, 2026.

<u>/s/ Stacey D. Neumann</u>
**UNITED STATES DISTRICT JUDGE**